```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TNT USA, INC.,
                                            MEMORANDUM & ORDER
                                            09-CV-0481(JS)(ARL)
                   Plaintiff,

         -against-

DHL EXPRESS (USA), INC.,

                   Defendant.
----------------------------------------X
APPEARANCES:
For Plaintiff:     Gary Alexander Stahl, Esq.
                   Jeffrey W. Pagano, Esq.
                   Crowell & Moring LLP
                   590 Madison Avenue
                   New York, NY 10022


For Defendant:     Elyse Debra Echtman, Esq.
                   J. Peter Coll , Jr., Esq.
                   Orrick Herrington & Sutcliffe LLP
                   51 West 52nd Street
                   New York, NY 10019
```

SEYBERT, District Judge:

Plaintiff TNT USA, Inc. ("Plaintiff" or "TNT") sued Defendant DHL Express (USA), Inc. ("Defendant" or "DHL") for breach of contract. Pending before the Court are TNT's objections to two of Magistrate Judge Arlene R. Lindsay's discovery rulings, dated January 6, 2011 (the January 6 Order") and January 19, 2011 (the "January 19 Order"), respectively (together, the "January Orders"). Specifically, TNT objects to Judge Lindsay's Orders (1) compelling discovery concerning shipping rates charged to TNT's affiliates; (2) the deposition

of Alan Corps; and (3) the deposition of Mark Gunton. For the reasons that follow, the January Orders are affirmed in their entirety.

## BACKGROUND

The Court only sets forth facts necessary to ground the discussion that follows. Briefly, TNT and DHL are international express parcel shipping companies. TNT does not have an extensive United States network so, in 2002, it contracted with Airborne Express ("Airborne") for the handling of some of TNT's US-bound packages. DHL acquired Airborne in 2003 and TNT and DHL elected to continue the arrangement that TNT had enjoyed with Airborne.

The TNT-DHL agreement fell apart in November 2008, and TNT is now suing DHL for breach of contract. In defense, DHL argues, among other things, that TNT was planning to shift its business to a different US shipping company well in advance of November 2008. DHL also argues that TNT suffered no damages because any increased shipping costs resulting from an alleged breach were borne by TNT's overseas affiliates.

## DISCUSSION

The January Orders were not clearly erroneous are contrary to law, and they are affirmed in all respects.

I. Legal Standard

The Court may set aside a Magistrate Judge's order

concerning non-dispositive matters only if the order is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). An order is "clearly erroneous only when the reviewing court[, based] on the entire evidence[,] is left with the definite and firm conviction that a mistake has been committed." Weiss v. La Suisse, 161 F. Supp. 2d 305, 320-21 (S.D.N.Y. 2001). An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id.

Discovery matters are generally considered non-dispositive, so Rule 72(a) governs here. See id. "A magistrate judge's resolution of discovery disputes deserves substantial deference" and is overruled only if there is an abuse of discretion. Id.

II. Application

TNT objects to the portion of the January 6 order compelling discovery "concerning rates TNT charges its affiliates for domestic shipping services" in the United States. January 6 Order at 1. This discovery is aimed at determining what, if any, damages TNT suffered when it switched shipping services around the time of the alleged breach. TNT argues that this information is irrelevant because, even if TNT passed its increased costs on to its affiliates, whether a breach-of-contract plaintiff passes its costs to a consumer is generally irrelevant to a damages theory. (See TNT Obj. at 12-16.)

3

Although this is true as a general rule, DHL has made a colorable argument--at least for the purposes of permitting discovery--that this case fits into an exception to that rule, either because TNT is owned or controlled by those to whom the added costs were passed on, or because it had a "cost-plus" arrangement with its affiliates, whereby "the purchaser is insulated from any decrease in its sales as a result of attempting to pass on the overcharge, because its customer is committed to buying a fixed quantity regardless of price." Illinois Brick Co. v. Illinois, 431 U.S. 720, 736, 97 S. Ct. 2061, 2069-70, 52 L. Ed. 2d 707 (1977). Accordingly, the Order compelling discovery in this area was neither contrary to law nor clearly erroneous.

In the same vein, the January 19 Order compelling the deposition of Alan Corps was proper. Judge Lindsay could have properly concluded that this deposition was permissible because Corps "authored documents concerning an area of inquiry addressed in the Court's January 6, 2011 order. [DHL's] motion to compel discovery concerning rates was previously granted . . . ." January 19 Order.

Finally, the Order compelling the deposition of Mark Gunton was also proper. TNT maintains that depositions of senior executives should not be permitted unless the executive has personal knowledge of relevant facts, (TNT Obj. at 21), and that

Gunton had no knowledge of TNT's alleged plan to shift its business away from DHL before November 2008. But Judge Lindsay could have properly found that Gunton "is party to email communications that reference a plan to move away from DHL" and that the "issue of whether TNT planned to terminate its relationship" with DHL "prior to November 2008 is at the core of this litigation." January 6 Order at 1. Gunton, for example, received an email in May 2008 in which the author states "My first reaction was it only stresses the importance of executing the plan to move away from DHL asap." (TNT Ex. 26. (emphasis added).)

## CONCLUSION

For the foregoing reasons, TNT's objections to the January Orders are overruled and the Orders are affirmed in their entirety.

SO ORDERED.

/s/ Joanna Seybert

Joanna Seybert, U.S.D.J.

Dated: May 2, 2011
Central Islip, New York